# EXHIBIT B

**EXHIBIT A**

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF RICHLAND<br><br>JAMIE WEATHERFORD and<br>KIMBERLY WEATHERFORD,<br>on behalf of themselves and all others<br>similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>BURLINGTON INDUSTRIES, INC.,<br>G&L INDUSTRIES, INC., and G&L<br>INDUSTRIES, LLC,<br><br>            Defendants. | IN THE COURT OF COMMON PLEAS<br>FIFTH JUDICIAL CIRCUIT<br><br>Civil Action No.: 2022-CP-40-_____<br><br><br><br><br>**SUMMONS** |

TO:    THE DEFENDANTS ABOVE-NAMED:

       YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your Answer to this Complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

[Signature Page to Follow]

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

Respectfully submitted,

BY:  s/ A. Gibson Solomons, III
A. Gibson Solomons, III
Speights & Solomons, LLC
100 Oak Street East
Post Office Box 685
Hampton, South Carolina 29924
(803) 943-4444
gsolomons@speightsandsolomons.com

Vincent A. Sheheen
Michael Wright
Savage Royall & Sheheen, LLP
1111 Church Street
Post Office Drawer 10
Camden, South Carolina 29020
(803) 432-4391
vsheheen@thesavagefirm.com
mwright@thesavagefirm.com

*ATTORNEYS FOR PLAINTIFFS*

Hampton, South Carolina
November 3, 2022

2

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF RICHLAND<br><br>JAMIE WEATHERFORD and KIMBERLY WEATHERFORD,<br>on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>BURLINGTON INDUSTRIES, INC., G&L INDUSTRIES, INC., and G&L INDUSTRIES, LLC,,<br><br>               Defendants. | IN THE COURT OF COMMON PLEAS FIFTH JUDICIAL CIRCUIT<br><br>Civil Action No.: 2022-CP-40-_____<br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs, Jamie and Kimberly Weatherford, on behalf of themselves and all other similarly situated, by and through their undersigned counsel, hereby bring this Complaint against Burlington Industries, Inc. G&L Industries, Inc., and G&L Industries, LLC and allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Jamie and Kimberly Weatherford (hereinafter "Plaintiffs" or "Weatherfords") are citizens of the State of South Carolina, residing at 641 Journeys End, Darlington, South Carolina 29540.

2. Defendant Burlington Industries, Inc., (hereinafter "Burlington") had a principal place of business in Burlington, North Carolina, and was a company registered and licensed to do business in South Carolina. Additionally, Burlington's receiver has been appointed by a South Carolina court and is a South Carolina resident.

3. Upon information and belief, Burlington owned and operated a textile plant later named Galey & Lord located at 670 North Main Street, Society Hill, South ("Burlington Plant") in proximity to Plaintiffs' property until 1988.

4. Upon information and belief, Defendant G&L Industries, Inc. is a Delaware corporation owned and operated the Burlington Plant from 1988 until 2004.

5. Upon information and belief, Burlington retained a minority interest in G&L Industries, Inc. following the sale of the Burlington Plant.

6. Upon information and belief, Defendant G&L Industries, Inc. conveyed the Burlington Plant to G&L Industries, LLC in 2004. G&L Industries, Inc. and G&L Industries, LLC are hereinafter collectively referred to as Galey and Lord. Upon information and belief, appointment of a receiver in South Carolina for Galey & Lord is appropriate.

7. From 1966 until 2016, the Burlington Plant operated in Darlington County as a textile dyeing and finishing plant.

8. During the entire tenure of operation, the Burlington Plant operated as a textile plant and, as part of those operations, treated textiles with Perfluorooctanoic Acid ("PFOA") and Perfulorooctanesulfonic Acid (PFOS") (collectively referred to as "PFAs"), a man-made chemical compound contained in the products being produced.

9. The treatment of the textiles with PFAS compounds created, during every year of operation, a risk and reality of damage of surrounding properties by the contamination of soil and water with PFAS compounds, a fact now confirmed by government testing of Plaintiffs' land.

10. This civil action involves contamination of Plaintiffs' property and the operation of the Burlington Plant and arises out of events concerning Defendants' business operations of the Burlington Plant.

11. The aforementioned contamination has resulted in significant damages to Plaintiffs, including the cost of filtering contaminated air and water; the cost of cleaning and replacing contaminated property, plumbing, fixtures, and appliances; loss of use and

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

enjoyment of contaminated property; the reduced value of property and businesses due to the contamination and continuing trespass; and mental anguish.

12.  This Honorable Court has jurisdiction over all maters herein, and jurisdiction is proper because a substantial portion of Defendants' business was conducted within the State of South Carolina, a substantial portion of the acts and omissions giving rise to this cause of action take place and affected real property of Plaintiffs in South Carolina, and the recognized receiver for Defendant Burlington is a South Carolina resident.

## NATURE OF THE ACTION

13.  This is a civil action for compensatory and punitive damages, costs incurred and to be incurred by Plaintiffs, and any other damages that the Court or jury may deem appropriate for property damage as a result of contamination by a class of chemicals known as PFAS that are used in the treatment and finishing of textiles.

14.  PFAs are man-made chemical compounds that have become notorious as global environmental contaminants—found in bays, oceans, rivers, streams, soil, and air.

15.  Even in very small doses, PFAs can cause testicular, pancreatic, uterine and kidney cancer, as well as liver disease, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension, among other illnesses.

16.  From 1966 until 2016, the Burlington Plant operated in Society Hill in Darlington County as a textile dyeing and finishing plant, manufacturing finished cotton and cotton-blended fabrics for men's and women's apparel, uniforms, and protective clothing. In 2016, the 234 acres site was abruptly abandoned and the site was not remediated. Even prior to the abandonment of the site, wastewater generated by the plant was an environmental concern.

17.  As a result of the textile operations at the Burlington Plant, the adjacent Cedar Creek and the Great Pee Dee River are polluted with harmful PFAs. Additionally, Plaintiffs

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

and their real properties and their nearby surface waters have been invaded by, exposed to, and suffered damage from dangerous amounts of toxic chemicals released into the soil and water as a result of the operations at the Burlington Plant.

18.     This class action is on behalf of all residents and business owners who experienced and will continue to experience serious property damage caused by Defendants' conduct. The class shall consist of all those with an interest in property damaged as result of PFAS contamination which more likely than not emanated from the Burlington Plant. The damages suffered by members of the class include, among other things: the cost of filtering contaminated air and water; the cost of cleaning and replacing contaminated property, plumbing, fixtures, and appliances; loss of use and enjoyment of contaminated property; the reduced value of property and businesses due to the contamination and continuing trespass; and the anxiety Plaintiffs felt when they realized that they had been breathing and drinking contaminated air and water. Plaintiffs are seeking monetary damages and injunctive relief to address all these past, present, and future injuries.

## **CLASS ALLEGATIONS**

19.     Plaintiffs repeat and reallege the allegations contained in the above paragraphs as if fully repeated verbatim herein to the extent that none of the following is legally inconsistent with the foregoing.

20.     The Weatherfords bring this action pursuant to Rule 23 of the South Carolina Rules of Civil Procedure ("SCRCP"), on behalf of themselves and a class of similarly situated persons.

21.     The Class ("Class") is defined as all persons who have any beneficial interest in any real property that has been damaged by the contamination and trespass of PFAs chemicals from the Burlington Plant.

22.     Upon information and belief, the members of the Class are so numerous that

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

the individual joinder of all members is impractical.

23.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual members of the class.

24.     The Weatherfords' claims are typical of the claims of the Class and the Weatherfords do not have interests adverse to other members of the class.

25.     The Weatherfords have retained counsel who are experienced in class action litigation and the Weatherfords will fairly and adequately protect the interests of the Class.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of the controversy.

27.     The class is ascertainable through the establishment of objective criteria including ownership of property and the scientifically established presence of PFAS chemical products.

28.     Given the size of the individual claims, many class members may not be able to seek legal redress individually for the wrongs committed by the Defendants.

29.     The prosecution of separate actions by individual members of the class would create the risk of inconsistent adjudications.

30.     The Weatherfords seek certification of the action as a class action so that the liability of the Defendants may be adjudicated.

31.     Certification of the Class as requested herein will result in an orderly and expeditious administration of class claims, economy of time, effort and expense, and uniformity of decisions will be insured.

**FACTUAL ALLEGATIONS**

32.     Plaintiffs repeat and reallege the allegations contained in the above paragraphs as if fully repeated verbatim herein to the extent that none of the following is legally inconsistent with the foregoing.

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

33. PFAs have been used heavily by the textile industry for stain and water resistance.

34. Operations at the Burlington Plant began in 1966 and included dyeing, finishing, and surface treatment of cotton and synthetic fabrics.[1]

35. Textile finishing requires a large water source and the Burlington Plant was built adjacent to the Great Pee Dee River. The wastewater generated from textile manufacturing at the Burlington Plant was treated in the Wastewater Treatment Plant ("WWTP"), which included several basins (0.2 to 9.65 acres) located adjacent to Cedar Creek and the Great Pee Dee River.[2]

36. As part of the regular operations of the facility, the Burlington Plant used PFOS and PFOA chemicals to treat textiles for stain resistance and water resistance.

37. Publicly available permit applications to the South Carolina Department of Health and Environmental Control ("SCDHEC") reveal that Defendant Burlington was utilizing PFAS as early as 1973 as noted in the brief descriptions of the raw materials being utilized to treat the textiles for stain resistance and water resistance.[3]

38. As a result, the Burlington Plant discharged through its wastewater this group of synthetic chemical compounds. These PFAs made their way downstream through Cedar Creek, the Great Pee Dee River, and eventually onto the Plaintiffs' property.

39. The Burlington Plant's operations resulted in PFAS products severely contaminating the Burlington Plant site and downstream properties including the Plaintiffs.

40. PFAS products are highly toxic to humans. Scientists have linked PFAS to

---

[1] See https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.cleanup&id=0403308 (last accessed October 31, 2022).
[2] See https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.cleanup&id=0403308 (last accessed October 31, 2022).
[3] See Hazard Ranking System (HRS) Documentation Record—Galey and Lord Plant (Docket EPA-HQ-OLEM-2021-0464), EPA, September 9, 2021, available at https://www.regulations.gov/document/EPA-HQ-OLEM-2021-0464-0004 (last accessed November 3, 2022)

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

4:22-cv-01427-RBH     Date Filed 01/13/23     Entry Number 39-1     Page 9 of 18
4:22-cv-01427-JDA     Date Filed 04/18/24     Entry Number 118-2     Page 10 of 19

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

kidney cancer, testicular cancer, prostate cancer, ovarian cancer, non-Hodgkin lymphoma, liver disease, ulcerative colitis, thyroid disease, hypercholesterolemia, and pregnancy-induced hypertension, among other illnesses.

41. In light of the dangers posed by PFAs, the U.S. Environmental Protection Agency ("EPA") recently published interim health advisory levels ("HAL") of 4 ng/L (or .004 parts per trillion "ppt") for the sum of the PFOA and PFOS concentrations in drinking water.[4]

42. Moreover, once PFAS products have damaged property, the compounds are extremely difficult to remediate because they are not biodegradable. "Long-chain PFAs"—so called because they have six or more carbon atoms—can persist in the environment for over 2,000 years.

43. Additionally, it is extremely difficult to clean air, water, or property contaminated by PFAs because the chemicals bond with proteins in the cells of living organisms and adhere to sediment, scale, and pipes. Normal drinking water filtration systems do not remove the PFAs effectively.

44. This is particularly hazardous, because PFAs can persist in the human body for decades.

45. Upon information and belief, the PFAS products were used at the plant for decades dating back to the earliest uses of Scotchguard and by the time Burlington sold the plant in 1988, the industrial site and drainage corridor were seriously contaminated with high concentrations of PFAs.

46. Upon information and belief, Burlington knew prior to its sale of the Burlington Plant to Galey & Lord that the products it was using in its operations contained PFAs.

---

[4] See https://www.epa.gov/system/files/documents/202207/PFAS%20Has%20for%20Water%20Utility%20Briefing%20-%20June%202022Final.pdf (last accessed October 31, 2022).

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

47. Current publicly available reports reveal soil and water sampling at the Burlington Plant revealing hazardous chemicals as early as 1988.

48. Further, upon information and belief, Galey & Lord knew and understood the textile process, the use of PFAs in the treatment of textiles, the necessary production and disposal of industrial wastewater in that process.

49. Defendants knew or should have known that the PFAs use in its industrial processes were harmful to the environment and public health.

50. Despite this knowledge, Defendants directly and indirectly deposited PFAS onto the Burlington Plant and properties surrounding the plant.

51. Defendants knew or should have known that its actions and omissions would lead to contamination of downstream properties.

52. On or about April 19, 2013, pursuant to applicable federal and state statutes, Defendant Galey & Lord entered into a Responsible Party Voluntary Cleanup Contract ("VCC") with the SCDHEC to remedy contamination that Defendant Galey & Lord knew was in the groundwater at the Burlington Plant.[5]

53. The Burlington Plant was abandoned in 2016 and the VCC was terminated in 2017 for failure to comply with the terms of the VCC.[6]

54. In 2018, Hurricane Florence flooded the Burlington Plant, resulting in the toxic chemical wastewater from the WWTP basins overflowing into wetlands, Cedar Creek, the Great Pee Dee River, and Plaintiffs' property.

55. The EPA conducted a removal site evaluation of the Burlington Plant in February 2019, emergency response in March 2019, and a time critical removal action in May

---

[5] See https://scdhec.gov/sites/default/files/docs/HomeAndEnvironment/Docs/Executed_VCC.pdf (last accessed October 31, 2022).
[6] See https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.cleanup&id=0403308#Done (last accessed October 31, 2022).

2019.[7]

56. During the time-critical removal action at the Burlington Plant, a total of 2,400 abandoned containers were bulked and transported off property for disposal. Additionally, approximately 100,000 gallons of liquid flammables, neutral, corrosive, and oxidizer waste; 53,000 pounds of solid flammable, neutral, corrosive, and oxidizer waste; and 17 separate hazardous materials cubic yard boxes of solid dyes were sent off property for disposal.[8]

57. Defendants knew or should have known that the discharge of materials containing hazardous PFAs would likely migrate and contaminate the Plaintiffs' property. In spite of such knowledge, Burlington caused, allowed, and failed to prevent contamination of Plaintiffs' property and further failed to properly remove or remediate said contamination and pollution, thereby allowing it to continue to impact said properties.

58. Defendants' actions and inactions regarding said discharges and releases are in reckless and/or willful disregard of Plaintiffs' rights and property.

59. As a proximate result of Defendants' acts and delicts, Plaintiffs have suffered and will continue to suffer damages to their property now and in the future, including financial loss, loss of value of the property, loss of the use and enjoyment of the property, and increased risk of exposure to hazardous and toxic substances, as well as a continued interference with the use and enjoyment of their property.

60. Plaintiffs also face the risk of having to pay remediation costs in the future.

61. Due to the trespass and nuisance as set forth herein, Plaintiffs have suffered and continue to suffer due to loss of use and enjoyment of their property, annoyance, inconvenience, discomfort, loss of enjoyment of life, and interference with mental tranquility.

62. The migration of the hazardous and toxic PFAs from the Burlington Plant to

---

[7] Id.
[8] Id.

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

Plaintiffs' property is continuing, causing ongoing loss, damage, and risk to Plaintiffs' health and property.

63. The motive for Defendants' decades-long scheme to deceive the public is apparent. Money was a higher priority than the safety and well-being of people like the Weatherfords and other citizens of South Carolina similarly situated.

**FOR A FIRST CAUSE OF ACTION**
**(Negligence and Recklessness)**

64. Plaintiffs repeat and reallege the allegations contained in the above paragraphs as if fully repeated verbatim herein to the extent that none of the following is legally inconsistent with the foregoing.

65. The Defendants knew or, through the exercise of reasonable care, should have known that its industrial processes resulted in the continued and repeating release of products containing PFAs onto Plaintiffs' property, thereby damaging it.

66. Despite this, Defendants did nothing to prevent or adequately control the repetitive release and discharge of these hazardous and toxic constituents onto Plaintiffs' property.

67. Defendants knew or should have known that its handling of industrial waste over a span of decades would result in PFAs being released onto Plaintiffs' property, thereby damaging it.

68. Defendants knew or should have known that its failure to remediate, remove, or prevent the migration of hazardous and toxic constituents on its plant site would cause multiple releases and discharges of such substances onto the properties of their neighbors, including the Plaintiffs, thereby damaging them.

69. Defendants owed and continue to owe Plaintiffs a duty of care.

70. This duty includes a duty to not allow or cause the PFA chemicals to migrate

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

from the Burlington Plant.

71.  Defendants knew or should have known of the risks to person and property caused by such releases and discharges.

72.  Defendants had a duty to comply with all federal, state, and local laws.

73.  Defendants knew or should have known that such substances are toxic and hazardous and would present a serious risk or injury to persons, properties, and the environment in the event of release or discharge.

74.  Despite this knowledge, Defendants' handling, releasing, and discharging of hazardous substances was inadequate, improper, and reckless.

75.  Defendants knew or should have known that the discharges and releases of hazardous substances were migrating and continue to migrate onto Plaintiffs' property.

76.  Defendants, by and through its agents and servants, were negligent, grossly negligent, reckless, careless, wanton, and willful as follows:

   a. discharging toxic and hazardous substances into the adjacent rivers;
   b. recklessly disposing of the toxic and hazardous waste created through its industrial processes;
   c. in allowing the release and discharge of hazardous and toxic substances, contaminants, and pollutants from its plant site into the environment and onto and into Plaintiffs' property;
   d. in causing the release and discharge of hazardous and toxic substances, contaminants, and pollutants into the environment;
   e. in failing to establish, implement, and maintain an appropriate procedure to prevent such hazardous and toxic substances from being released into the environment;
   f. in failing to design, construct, and maintain an appropriate system and/or method to prevent migration of such substances;
   g. in failing to timely inform state and federal authorities of the releases and discharges;
   h. in failing to timely warn persons, such as Plaintiffs, of the hazardous and dangerous discharges and releases, and of the propensity of such to migrate and contaminate their properties;
   i. in failing to warn persons, such as Plaintiffs, of the hazardous and dangerous nature of such substances;
   j. in failing to prevent further migration of such contaminants and pollutants onto Plaintiffs' property;

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

  k. in failing to timely remove and/or remediate such contamination, both on the plant site and throughout the impacted area;

  l. in continuing to allow the further migration of such contaminants and pollutants, thereby further impacting Plaintiffs' property;

  m. in violating the applicable federal and state laws regarding the release and discharge of hazardous substances, which constitutes negligence *per se*; and

  n. in failing to reasonably conduct tests of soils, sediments, and surface water on its property after being informed PFAs were in the products sold to and used by Defendants at this site.

77. As a direct and proximate result of Defendants' acts and omissions, Plaintiffs have been damaged as set forth hereinabove.

78. Further, the migration of the PFAs onto Plaintiffs' property, and the hazardous and dangerous nature of the PFAs is continuing to cause damages.

79. That the aforesaid acts and delicts of Defendants are in violation of the South Carolina Pollution Control Act, S.C. Code Ann. § 48-1-10, et seq., and constitute negligence *per se*.

80. As a proximate result, Plaintiffs have been damaged as set forth hereinabove.

## FOR A SECOND CAUSE OF ACTION
### (Trespass)

81. Plaintiffs repeat and reallege the allegations contained in the above paragraphs as if fully repeated verbatim herein to the extent that none of the following is legally inconsistent with the foregoing.

82. Defendants had the intent to and have caused and/or allowed the discharge and release and has discharged and/or released hazardous and toxic substances into the environment, which have entered and invaded the Plaintiffs' property.

83. Plaintiffs at no time gave Defendants permission or license to release and/or discharge such substances onto their property.

84. Defendants knew or should have known that its failures to prevent release of

the PFAs, and the release and discharge of such substances, would likely damage the properties of their neighbors, including Plaintiffs' property.

85. That Defendants acted voluntarily in allowing and/or causing the releases and discharge of the hazardous and toxic substances from the site and into the environment.

86. That Defendants committed multiple and continuing acts of Trespass onto and into Plaintiffs' property, in that:

    a. Plaintiffs have legal possession of their property;
    b. Defendants committed voluntary entries of hazardous and toxic substances onto and into the property of Plaintiffs; and
    c. the entries were without Plaintiffs' permission.

87. That as a proximate result, Plaintiffs have been damaged as set forth hereinabove.

88. That Plaintiffs are entitled to actual and punitive damages as a result of Defendants' conduct.

## FOR A THIRD CAUSE OF ACTION
### (Nuisance)

89. Plaintiffs repeat and reallege the allegations contained in the above paragraphs as if fully repeated verbatim herein to the extent that none of the following is legally inconsistent with the foregoing.

90. Defendants were engaged in a business involving use and handling of materials which contained toxic PFAs, and the maintenance and operation of the Burlington Plant and property on which it is located contains serious contamination and hazardous and toxic substances.

91. Defendants released and discharged hazardous and toxic substances into the environment. These hazardous and toxic substances invaded the property of Plaintiffs and interfered with Plaintiffs' use and enjoyment of Plaintiffs' property.

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

92. Plaintiffs did not give Defendants permission or license to release such substances onto Plaintiffs' property.

93. Defendants' release of hazardous substances onto and into Plaintiffs' property invaded and interfered with Plaintiffs' use and enjoyment of Plaintiffs' property.

94. The dangerous PFAs escaped from the Burlington Plant site and invaded and remain in the soil and environment and will continue to be present into the future and have interfered with the Plaintiffs' use and enjoyment of their property.

95. That Defendants' use and utilization of their property, including the discharge and release of PFAs into the impacted area and onto Plaintiffs' property, is an improper and inappropriate use of Defendants' property.

96. The PFAs present in the soil and environment that were released and discharged onto Plaintiffs' property by Defendants created a private nuisance to the Plaintiffs, and Defendants have not been granted license or permission by any state or federal governmental agency or by Plaintiffs to create such a nuisance.

97. As a further result of Defendants' releases and discharges into the soil and environment, Defendants have created a private nuisance, which proximately resulted in the damages to Plaintiffs as specified hereinabove.

98. That said nuisance is continuing in nature, and said migration and nuisance continue to impact Plaintiffs' property.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that the Court provide the Plaintiffs and the Class with the following relief:

A. An Order that this action be maintained as a class action and appointing Plaintiffs as representatives of the Class and appointing the undersigned as Class Counsel in this action;

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

and

B. Plaintiffs recover the general and special damages determined to have been sustained by each of them respectively, including, but not limited to, financial losses, loss of the use and enjoyment of their property and loss due to the increased risk of exposure of person and property to PFAS chemicals, as well as reimbursement of the costs of inspection, analysis, containment, and removal of PFAS chemicals or their contaminants incurred by the Plaintiffs or by the State of South Carolina or the Federal Government in their behalf, loss due to the interference of the use and enjoyment of Plaintiffs' property by plaintiffs due to remediation activities, and all such damages and other relief that is provided by statute, and the judgement therefore be entered herein against the Defendants in an amount to be determined; and

C. Plaintiffs recover punitive damages in an amount to be determined from Defendants for Defendants' reckless or willful disregard for the property of the Plaintiffs to impress upon the Defendants the seriousness of its misconduct and to deter similar misconduct in the future; and

D. Order Defendants to i) provide Plaintiffs and members of the Class with safe potable water, to flow from their faucets, at no cost to them; and ii) remediate contaminated groundwater to prevent further negative water quality impacts on Cedar Creek and the Great Pee Dee River;

E. Plaintiffs recover the costs of this suit, including but not limited to any expert witness fees, together with reasonable attorney's fees; and

F. The Court grant such other, further or different relief as may be deemed just and proper.

ELECTRONICALLY FILED - 2022 Nov 03 3:45 PM - RICHLAND - COMMON PLEAS - CASE#2022CP4005769

Respectfully submitted,

BY: s/ A. Gibson Solomons, III
A. Gibson Solomons, III
Speights & Solomons, LLC
100 Oak Street East
Post Office Box 685
Hampton, South Carolina 29924
(803) 943-4444
gsolomons@speightsandsolomons.com

Vincent A. Sheheen
Michael Wright
Savage Royall & Sheheen, LLP
1111 Church Street
Post Office Drawer 10
Camden, South Carolina 29020
(803) 432-4391
vsheheen@thesavagefirm.com
mwright@thesavagefirm.com

*ATTORNEYS FOR PLAINTIFFS*

Hampton, South Carolina
November 3, 2022